**Maximo HADDAD, an individual, Plaintiff,**

v.

**RAV BAHAMAS, LTD., a foreign corporation, and Gerardo Capo, an individual, Defendants.**

No. 05–21013–CIV.

United States District Court, S.D. Florida.

Nov. 12, 2008.

See also 240 Fed.Appx. 821.

Stanley H. Wakshlag, Christina Ceballos–Levy, and Jeffery E. Marcus of the

firm of Kenny Nachwalter, P.A., Amanda M. McGovern of the firm of Bilzin Sumberg Baena Price & Axelrod LLP, and Paul Bass of the firm of Paul Bass, P.A. Miami, FL, for Defendants Rav Bahamas, Ltd. and Gerardo Capo.

Alexander Angueira of the firm of Alexander Angueira, P.L.L.C., Miami, FL, for Plaintiff Maximo Haddad.

## ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE REPORT AND TESTIMONY OF PLAINTIFF'S EXPERT BARRY MUKAMAL

PATRICIA A. SEITZ, District Judge.

THIS MATTER is before the Court on Defendants' Motion to Exclude Report and Testimony of Plaintiff's Expert Barry Mukamal ("Mukamal") [DE 198]. Defendants seek to exclude Mr. Mukamal's testimony because: (1) invalid assumptions render his methodology unreliable; and (2) he utilizes an impermissible time frame that is unhelpful to the jury. Having reviewed the motion, the response and the reply thereto, the report and the entire factual record, Defendants' motion is granted because Plaintiff's expert's opinion is based on a time frame not relevant to this case and does not address the parties' contractual remedy provisions, and thus would not be helpful to the jury.

## I. Background

This suit arose out of the parties' soured real estate venture. Plaintiff, a real estate investor, executed a memorandum of understanding ("MOU") with Defendants RAV and Gerardo Capo ("Capo") to provide capital infusions to a resort development ("Project") in North Bimini, in the Bahamas. In exchange, Plaintiff was to receive a fifty-percent equity stake in the Project. The Bahamian government authorized the Project in two phases, the first of which ("Phase I") approaches completion while the second ("Phase II") is on hold pending resolution of an environmental impact study. Although Plaintiff invested more than $4 million, he did not receive shares in the project.

Plaintiff brought suit on six counts: (1) securities fraud; (2) breach of fiduciary duty; (3) specific performance; (4) breach of contract; (5) constructive trust; and (6) joint venture accounting. On July 27, 2008, Plaintiff voluntarily dismissed two Counts, those seeking constructive trust and joint venture accounting. Four counts remain: (1) securities fraud; (2) breach of fiduciary duty; (3) specific performance; and (4) breach of contract. Proceeding to summary judgment, Plaintiff submitted Mr. Mukamal's report to quantify the net present value of the economic benefit flowing from the Project.

The Court's order on summary judgment dismissed the specific performance count because Plaintiff had not shown clear entitlement to the specific performance remedy. Some of the key facts that remain to be litigated are: (1) whether Capo acted with the intent to defraud Plaintiff at the execution of the MOU in 2001; (2) whether Plaintiff was on inquiry notice before April 2003; (3) whether Capo breached a fiduciary duty to Plaintiff in failing to disclose the personal use of $600,000 of Project funds in 2001, and if so, what damages flowed from breach; and (4) whether Capo breached the MOU in 2005 by failing to obtain government approvals.

In prior briefing, the parties discussed the appropriate legal measure of damages for each of Plaintiff's Counts. (*See* DE

146, 152.) The parties disputed the proper measure of damages for each of the three remaining counts; Plaintiff claims that the benefit of the bargain measure is the proper measure while Defendants assert that the out-of-pocket measure is appropriate. Mr. Mukamal's report aims to support Plaintiff's view that Plaintiff is entitled to the benefit of his bargain.

Defendants attack Mr. Mukamal's report on the following grounds: (1) assumptions made in the report render the methodology unreliable; and (2) the report is premised on a legally impermissible time frame, regardless of the measure of damages used, and is therefore unhelpful to the jury. Plaintiff maintains that Mr. Mukamal's methodology is generally accepted, his assumptions are proper, and the time frame utilized is relevant to the benefit of the bargain measure. Because Mr. Mukamal's assumed time frame is determinative of Defendants' motion, the Court will address that issue first.

### A. Mukamal's Expertise

Barry E. Mukamal is a Partner at Rachlin LLP in the firm's Advisory Services Department and has affiliated with the firm for eleven years. He is a licensed Certified Public Accountant in Florida. Mr. Mukamal is certified in business valuation and holds accreditation as a personal financial specialist and a certified fraud examiner. He has served as a court-appointed receiver and mediator, and as a Chapter 7 Panel Bankruptcy Trustee in the Southern District of Florida. He has also testified as an expert witness in state and federal litigation matters. As an expert witness, Mr. Mukamal formulated what he describes as a "retrospective development *pro forma*" valuation method to opine on the economic damages arising from the parties' real estate partnership.

### B. Mukamal's Opinion

Mr. Mukamal's report rests on two underlying premises: (1) Defendants will be found liable on counts that permit recovery of monetary damages; and (2) the relevant time frame for the measure of damages is August 2008. Proceeding from these premises, Mr. Mukamal presents two scenarios in which he quantifies: (1) the net present value of land; and (2) profits from future sales.

In the first scenario, Mr. Mukamal assumes partial development of the land before sale to ultimate consumers, and in the second, Mr. Mukamal assumes full development of the land before sale. The stayed Phase II development is included in both scenarios. The first scenario accounts for partial development of Phase II and values the remaining land; by contrast, the second scenario considers full residential development of Phase II, including a private island that does not yet exist. To determine profits from future sales in both scenarios, Mr. Mukamal assumed a sales absorption for residential units of 6 units per month. For marina slips, Mr. Mukamal assumed a sales absorption of 2 slips per month. Mr. Mukamal also assumes a residential unit price increase of three percent per year. Mr. Mukamal later recalculated his variables, utilizing more conservative sales assumptions because of the uncertain economic environment.

In total, Mr. Mukamal produces four alternative scenarios, varying by build-out, absorption, and appreciation rates, with net present values of: (1) $68,796,089 for partial development and normal demand; (2) $64,821,361 for partial development and conservative demand; (3) $59,566,043 for full development and normal demand; and (4) $53,561,513 for full development and

conservative demand. According to Mr. Mukamal, each of the four scenarios is equally plausible. (*See* DE 200 at 28.)

## II. Legal Standard

 The Federal Rules of Evidence assign to the trial judge the gatekeeper task of ensuring that an expert's testimony, whether scientific or non-scientific, rests on a reliable foundation and is relevant to the task at hand. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 148–49, 119 S.Ct. 1167, 143 L.Ed.2d 238 (U.S. 1999); *Corwin v. Walt Disney World Co.*, 475 F.3d 1239, 1250 (11th Cir.2007). In determining the admissibility of expert testimony under Federal Rule of Evidence 702, a trial court in the Eleventh Circuit must conduct "a rigorous" three-part inquiry considering whether: (1) the expert is qualified to testify competently regarding the matters intended to be addressed; (2) the methodology used to reach conclusions is sufficiently reliable, as determined by the sort of inquiry mandated in *Daubert*;[1] and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998). In determining whether the evidence appropriately assists the trier of fact, the Court must consider the expert evidence's potential to mislead and confuse the trier of fact. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1111 (11th Cir.2005) (emphasizing the enhanced importance and role Federal Rule of Evidence 403 plays in excluding overly prejudicial expert evidence).

 The party offering the expert bears the burden of laying the proper foundation for the admission of expert testimony and must prove the admissibility by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir.1999). A district court has considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable, and that discretion is given a large degree of deference. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir.2004).

## III. Discussion

### A. Relevance to Plaintiff's Damages and Remedies Under the MOU

 Plaintiff has not shown that Mr. Mukamal's valuation of the Project is relevant to Defendants' purported liability under each triable claim. Valuation of the Project's shares is not relevant to Plaintiff's damages arising from Defendants' purported breach of fiduciary duty by withdrawing $600,000 of Project funds for personal use unbeknownst to Plaintiff. Plaintiff's damages arising from this alleged breach, if any, are based on the withdrawal and do not implicate Plaintiff's underlying equity interest in the Project. For the breach of contract claim, Mr. Mukamal's calculation of the Project's net present value does not account for the calculation of shares stipulated in the MOU's paragraph 11. Paragraph 11 states that, if Plaintiff elects to receive shares, "[t]he value of the shares ... [would] be based upon a land value of $10M plus any and all cash advances made by" Plaintiff. (*See* DE 194, Ex. F ¶ 11.) Mr. Mukamal ignores this requirement

---

**1.** *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

throughout his report.[2] Because Plaintiff does not show that Mr. Mukamal's analysis is relevant to Plaintiff's damages and because Mr. Mukamal ignores the MOU's remedy provisions, Mr. Mukamal's report and testimony are not helpful to the jury and must be excluded.[3]

## B. Relevant Time

Mr. Mukamal's conclusions are based on the assumption that damages must be valued as of August 2008. Defendants argue that the legally relevant date is no later than February 2005, and therefore Mr. Mukamal's conclusions are unreliable and unhelpful to the trier of fact and must be excluded. In response, Plaintiff claims that the benefit of the bargain damages analysis permits Mr. Mukamal to value damages as of August 2008. Contrary to Plaintiff's assertion, the law is clear that August 2008 is legally irrelevant to the measure of damages for each of Plaintiff's Counts.

### 1. Legally Relevant Time for Plaintiff's Counts

#### a. Breach of Contract Claim

■ Under the MOU's paragraph 11, in the event that Defendants "fail[ ] or refuse[ ] to close," Plaintiff may elect: (1) a return of his investment; or (2) an issuance of shares in the Project "equal to the amount of any advance or contribution (including 'sweat equity') that he would have made at the relevant time." (*See* DE 194, Ex. F ¶ 11.) The purported contractual breach at issue here occurred in February 2005 when Capo allegedly told Plaintiff that he would abandon efforts to pursue regulatory approvals. (*See* DE 195, Ex. 5 at 233:7–234:8.) Instead of calculating the value of shares at February 2005, Mr. Mukamal utilizes the contractually irrelevant August 2008 time frame.[4]

#### b. Breach of Fiduciary Duty Claim

■ Like damages for breach of contract, damages for breach of fiduciary duty are measured as of the date of breach. *See Kane v. Shearson Lehman Hutton, Inc.*, 916 F.2d 643, 647 (11th Cir.1990). The purported breach Plaintiff identifies is Capo's withdrawal of capital contributions without Plaintiff's knowledge or consent which allegedly occurred in 2001, not 2008. Assuming arguendo that 2008 is the appropriate time to evaluate Plaintiff's damages, Mr, Mukamal's valuation of shares is not relevant to Defendants' alleged breach of a fiduciary duty.

#### c. Securities Fraud Claim

■ In securities fraud actions, the Eleventh Circuit permits recovery of out-

---

**2.** Mr. Mukamal does recognize that the MOU provides Plaintiff a 50 percent interest in the Project. (*See* DE 198, Ex. I at 3.) Were Mr. Mukamal to testify that Plaintiff's damages amount to 50 percent of his net present value calculation, Mr. Mukamal's testimony would be irrelevant because the MOU's paragraph 11 charges that, assuming Plaintiff elects to receive shares, the value of shares due to Plaintiff would not be 50 percent, but would rather be based on Plaintiff's advances or contributions. (*See* DE 194, Ex. F ¶ 11.)

**3.** Defendants also claim that Mr. Mukamal's report will confuse the jury because it offers four separate conclusions and fails to evaluate

Plaintiff's alleged equity interest. Because the Court determines that Mr. Mukamal's analysis is irrelevant to Plaintiff's damages and therefore unhelpful to the jury, the Court need not reach this issue.

**4.** Under Florida law, damages for breach of contract are measured as of the date of the purported breach. *See Lake Region Paradise Island, Inc. v. Graviss*, 335 So.2d 341, 342 (Fla. 2d DCA 1976); *see also Grossman Hldgs., Ltd. v. Hourihan*, 414 So.2d 1037, 1040 (Fla.1982).

of-pocket damages or benefit of the bargain damages. *Pelletier v. Stuart–James Company, Inc.,* 863 F.2d 1550 (11th Cir. 1989). The out-of-pocket measure allows recovery of the difference between the price paid and the value of the security absent misrepresentations at the time of the initial purchase. *See generally Robbins v. Koger Prop. Inc.,* 116 F.3d 1441, 1447 n. 5 (11th Cir.1997). The benefit of the bargain measure allows recovery of the difference between the price paid and the value of the security according to the misrepresentations at the time of the initial purchase. *See Morgan Stanley & Co. v. Coleman (Parent) Hldgs., Inc.,* 955 So.2d 1124, 1128 (Fla. 4th DCA 2007) (stating that federal and state law measure is identical). Under either measure, the relevant time period is the time of the initial purchase by the defrauded buyer. In this case, the initial purchase occurred on April 11, 2001.

Regardless of the appropriate damages measure, evidence evaluating damages as of August 2008 is irrelevant to each of Plaintiff's triable causes of action. Plaintiff attests that Mr. Mukamal's review of the enterprise as of August 2008 is relevant to giving Plaintiff the benefit of the bargain. However, this is contrary to Plaintiff's assertion on April 18, 2008 that February 2005 was the appropriate time to apply the benefit of the bargain measure of damages. (*See* DE 146 at 4.) The August 2008 premise used in Mr. Mukamal's report is irrelevant and therefore unhelpful to the jury's task of determining Plaintiff's damages, if any. Thus, Mr. Mukamal's report and testimony must be excluded.[5]

## IV. Conclusion

For the reasons set forth herein, it is hereby

ORDERED that

(1) Defendants' Motion to Exclude Report and Testimony of Plaintiff's Expert Barry Mukamal [DE 277] is GRANTED. Mr. Mukamal may not testify at trial.

---

5. Defendants object to the following assumptions made by Mr. Mukamal: (1) inclusion of Phase II development in projected sales; (2) sales rates for residential units and marina slips; and (3) residential price appreciation rate. Assuming that Mr. Mukamal's report captured the appropriate time period and was relevant to Plaintiff's purported damages under each Count, which it does not, Defendants' objections are misplaced because Mr. Mukamal's use of these assumptions is based on "more than belief or unsupported speculation." *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786. Indeed, Mr. Mukamal relies on (1) Defendants' historic sales data; (2) Defendants' revenue and expense projections; (3)